**E-FILED**
Thursday, 30 November, 2006  01:23:38 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JACK NEWSOME,
      Plaintiff,

vs.                                  03-1109

WEXFORD HEALTH SERVICES, et.al.,
      Defendants.

## ORDER

    This cause is before the court for consideration of the defendants' motions for summary judgement. [d/e 161, 168].

## BACKGROUND

    The pro se plaintiff originally filed his complaint pursuant to 42 U.S.C.§1983 against 60 defendants.   The plaintiff now has seven surviving claims against 29 defendants including allegations that:

    1) Defendants Shettleworth, Evans, Kottkamp, West, Schomig and Marshall wrote false incident reports against the plaintiff and encouraged criminal prosecution in December of 2001 in retaliation on for the plaintiff's numerous grievances and lawsuits.

    2) Defendants Beasley, Birkel, Brown, Shettleworth, Melvin, Edgeton, Dahlbach, Hageman, Allen, Cramer, Schomig, Funk, Jordan-Luster, Hetman, Tucker, Cravens, Hunt, Melvin, Pitchford and Snyder were deliberately indifferent to the plaintiff's serious medical condition when they caused delays and interfered with his diabetes treatment from October of 2001 to December of 2001 and from April of 2003 to May 2003.

    3) Defendants Starkey and Allen was deliberately indifferent to the plaintiff's serious medical condition on May 1, 2001 when the plaintiff suffered an insulin reaction.

    4) Defendant Starkey wrote a false disciplinary report in retaliation for plaintiff's legal activities  in June of 2001 which was later expunged.

    5) Defendants Gerber and Gerberding filed false disciplinary reports against the plaintiff in May of 2001 which were later expunged.   These tickets were also written in retaliation for the plaintiff's various lawsuits and grievances.

    6) Defendants Forsyth, Linn, Croft, Dahlbach, Cramer, Hageman, Shettleworth and Melvin were all involved in "conspiracy and retaliatory conduct" from April 2001 to October of 2001 based on the plaintiff's grievances and lawsuits.

1

7) Defendant Hobart used excessive force on December 24, 2001 when the plaintiff complained about a body cavity search**.**

The court notes that in response to the motion for summary judgement, the plaintiff still appears to be contesting what claims he are covered in this lawsuit.   This court has been patient and lenient in providing multiple opportunities for the plaintiff to abide by Rule 8 of the Federal Rules of Civil Procedure. *See* March 9, 2004 Text Order; March 16, 2005 Court Order; June 3, 2005 Court Order; June 13, 2005 Court Order; February 9, 2006 Court Order.  This court has also been patient and lenient in its eventual interpretation of the plaintiff's potential claims. *See* June 13, 2005 Court Order; February 9, 2006 Court Order.   The plaintiff has continually ignored the court's direction, made very broad and general accusations that did not provide the defendants a chance to provide a meaningful response, and has named as many as 67 defendants without stating what many were accused of doing.

The court has repeatedly tried to impress upon the plaintiff that it is to his advantage to narrow his claims to prevent his case from becoming "hopelessly confused." *See* February 9, 2006 Court Order.  The plaintiff has repeatedly ignored the court's advice.  At this point in the proceedings, the only claims before this court are those identified in the June 13, 2005 Court Order.  Therefore, the court will not consider plaintiff's arguments concerning other incidents.[1]

## I.  FACTS

The plaintiff did not respond to the statement of facts provided with either motion for summary judgement. The following facts are taken from the motions and the attached documentation.

The plaintiff was incarcerated at Pontiac Correctional Center during the incidents alleged in his lawsuit and Dr. Arthur Funk was the Medical Director at the time.  Dr. Funk says he did not personally exam the plaintiff during the time frame alleged in his complaint.  However, he had previously examined the plaintiff and was familiar with the plaintiff's diabetic condition.

Dr. Funk does admit he received various letters from the plaintiff during the time frame of his complaint.   On two occasions, October 6, 2001 and October 7, 2001, the plaintiff sent letters to Dr. Funk that dealt with housing or security issues.  Dr. Funk still responded to the letters and informed the plaintiff where he should appropriately direct his concerns. (Def. Memo, Ex. 2)

The plaintiff also sent letters concerning his transfer to another unit that required him to wear leg shackles and receive his insulin in a holding cell.  Dr. Funk responded that the plaintiff's complaints lacked merit.  He was still able to receive his insulin and there was no reason he could

---

[1]The court notes in reviewing the plaintiff's deposition, that there are numerous occasions when the plaintiff claims the court has "narrowed" his claims, and yet he is still unable to answer questions by providing specific dates or times or events. (Plain. Depo, p. 91, 111, 123, 125)

not wear leg shackles when needed.  (Def. Memo, Ex. 1)

The plaintiff also complained that a medical technician would not allow him to use Accucheck on April 24, 2003.  Accucheck is apparently a diabetic testing monitor to test glucose levels.  Dr. Funk simply responds that no Accucheck was ordered on this date. (Def. Memo, Ex. 1G, 1L).

The plaintiff next complained about missed dental, dietician and diabetic/hypertension clinic appointments.  Dr. Funk responded that any chronic care appointments are rescheduled when an inmate is not in his cell when called.  In addition, requests to reschedule dental or dietary appointments had to be made through the appropriate department.  The doctor informed the plaintiff how to go about rescheduling these appointments. (Def. Memo, Ex 1N)   The plaintiff's chronic care appointment was rescheduled. (Def. Memo, Ex. 1GG)

Some of the plaintiff's other letters were also forwarded to Dr. Funk.   The plaintiff alleged in one letter that all diabetics at Pontiac Correctional Center were housed in the lower cell houses except the plaintiff and he needed the lower assignment due to his diabetic condition. The plaintiff also claimed that Dr. Funk had not responded to correspondence the plaintiff had sent him.

Dr. Funk replied with a letter stating that diabetics have never been exclusively housed in the lower cell houses and that daily treatment can be provided in any cell house.  Dr. Funk also stated that he had responded to any correspondence he had received from the plaintiff in a timely manner. (Def. Memo, Ex. 1Q).  Defendant Funk has attached all correspondence and responses to his motion for summary judgement.

Dr. Funk further states that "[w]hile diabetes may be considered a serous medical need, it is not considered a serious medical need if it is properly managed and with the cooperation from the patient." (Def. Memo, Funk Aff, p. 5)  Dr. Funk says the medical record reveals that the plaintiff refused insulin injections on a number of occasions. (Def. Memo, Ex. 1R-AA) The plaintiff also admits he refused insulin at times. (Def. Memo, Plain Depo, p. 31, 40, 41;

Dr. Funk says in his medical opinion, the plaintiff's "diabetic medicine was given as ordered but for the times Mr. Newsome refused to take his insulin." (Def. Memo, Funk Aff, p. 5) "At no time did I believe Mr. Newsome's diabetic condition was not being addressed adequately or that he was at increased risk of serious harm. Mr. Newsome did not suffer injuries or have any diabetic reactions" during the relevant time frames. (Def. Memo, Funk Aff, p. 5)

The plaintiff received two disciplinary reports on June 6, 2000.[2]  Both accused the plaintiff of assaulting a staff member, making threats and insolence.  The plaintiff was found

---

[2]Defense counsel is advised that in the future, any statement of facts submitted to the court should make direct reference to its source by exhibit number or Bates No.

guilty and lost one year of good time credits as a result.   None of the documents associated with these disciplinary hearings were signed by Defendant Schomig. (Def. Memo, Clark Aff, p.2)

### III.  LEGAL STANDARD

The entry of summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56( c). A "material fact" is one that "might affect the outcome of the suit.*" Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute is genuine only if a reasonable jury could find for the nonmoving party.  *Id.*

A party moving for summary judgment initially has the burden of showing the absence of any genuine dispute of material fact based on the evidence*. Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153 (1970);  *Schroeder v. Barth, Inc.,* 969 F.2d 421, 423 (7th Cir. 1992).  A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position*.  Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994).  The evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.  Nonetheless, "(s)ummary judgement is not a discretionary remedy.  If the plaintiff lacks enough evidence, summary judgement must be granted." *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir. 1994).

### IV.  ANALYSIS

#### A. DR. FUNK'S MOTION FOR SUMMARY JUDGEMENT

Defendant Funk first argues that the plaintiff has failed to exhaust his administrative remedies for his one claim against the doctor.  The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.   42 U.S.C. §1997e(a).  *See also  Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532,  (7th Cir. 1999).

Jackie Miller, the Chairperson of the Office of Inmate Issues, says she has searched the records of the Administrative Review Board and was unable to find any grievance against Dr. Funk based on interfering or delaying diabetes treatment from October of 2001 to December of 2001 and from April of 2003 to May 2003.

The plaintiff does not directly respond to this argument in his response to Defendant Funk's motion for summary judgement.  Instead, the plaintiff makes reference to several grievances he filed concerning medical care, but none specifically against Dr. Funk.  The plaintiff has provided copies of a few grievances, but again, none that pertain to Dr. Funk.  In addition, the

4

plaintiff has provided a copy of his grievance log from January 16, 2001 to February 3, 2004, which lists a brief synopsis of approximately 142 grievances filed by the plaintiff.  None indicate they are filed against Dr. Funk.  There are some grievances that deal with medical care, but other individuals are named.  The plaintiff has failed to provide any evidence to demonstrate that he did in fact exhaust his administrative remedies for his claim against Dr. Funk.

The court of appeals has often observed that summary judgment is the "put up or shut up" moment in a lawsuit. *Schacht v. Wisconsin Department of Corrections,* 175 F.3d 497, 504 (7th Cir.1999). This means that to defeat defendants' motion for summary judgment, the plaintiff was required to show some evidence that he had exhausted his administrative remedies.  The plaintiff has failed to do this. Accordingly, Defendant Funk's motion for summary judgment will be granted.

The court also notes that even if the plaintiff had exhausted his administrative remedies, the plaintiff has not demonstrated that Dr. Funk was deliberately indifferent to his medical condition.   The plaintiff must pass both an objective and a subjective test in order to establish that the lack of appropriate medical care violated the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter,* 501 U.S. 294, 297 (1991).  The plaintiff must first demonstrate that the alleged deprivation was sufficiently serious. *Id.*   The plaintiff must also show that the defendants acted with deliberate indifference*.   Farmer v. Brennan*, 511 U.S. 825, 828 (1994).   "[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42).   Inadequate medical treatment due to negligence or even gross negligence does not support an Eighth Amendment violation. *Shockley v Jones*, 823 F.3d 1068, 1072 (7th Cir. 1987).  In addition, inmates are not entitled to a specific type of treatment, or even the best care, only reasonable measures to prevent a substantial risk of serious harm. *Forbes v. Edgar,* 112 F.3d, 262, 267 (7th Cir. 1997).

"[P]roof of deliberate indifference may be found where a prison official intentionally denies or delays access to medical care or intentionally interferes with the treatment once prescribed." *Jones v. Natesha* ,151 F.Supp.2d 938, 945 (N.D. Ill.  2001) *citing Ford,* 2001 WL 456427 at 6.   A delay in scheduling an appointment for medical treatment may constitute deliberate indifference. *Jones v. Simek*, 193 F.3d 485, 490-491 (7th Cir. 1999)  However, "an inmate who complains that delay in medical treatment rose to constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996).

The plaintiff clearly disagrees with the responses Dr. Funk provided to his letters.  Nonetheless, Dr. Funk did provide responses.  In addition, the plaintiff states that part of his claim against Dr. Funk is that the doctor used a $2 co-payment plan to further delay his treatments.  Beyond the plaintiff's bare accusation, he has presented no evidence of this claim.  Most importantly, there is no evidence in the record that any delay in medical treatment caused any harm to the plaintiff.

The court notes that the plaintiff disagrees that his claim against Dr. Funk was limited to the two time periods designated in the court's  June 13, 2005 Case Management Order.  The court notes that the time frames were stated by the plaintiff in his Second Amended Complaint. [d/e 118, p. 3]. At this point, the only claims before this court are those that were identified in this case management order.  Dr. Funk's motion for summary judgement is granted.

B.  REMAINING DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT.

1.  CLAIM NO. 1: RETALIATION.

The defendants argue that the plaintiff's claim that Defendants Shettleworth, Evans, Kottkamp, West, Schomig and Marshall retaliated against him by writing false incident reports and encouraging criminal prosecution is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).   The plaintiff admits that he lost good time credits as a results of the disciplinary hearing based on the "false" tickets.  In order for the court to determine that the actions of the defendants were unlawful, the court would have to find that the decision in the disciplinary hearing was invalid and based on improper motivations.

 In  *Heck,* the Supreme Court held that a suit that seeks to overturn a state sentence, or seeks a result that would invalidate a state sentence, requires the plaintiff to prove that the sentence has been declared invalid by a state tribunal authorized to make such a declaration.  *Id.* In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Court extended this ruling to include suits attacking intra prison disciplinary sanctions that affect the overall length of confinement.

Since the plaintiff fails to demonstrate that the disciplinary decision was vacated or otherwise overturned, his §1983 claim based on the disciplinary tickets is barred by *Heck* and *Edwards.*   In addition, the plaintiff states the local states attorney did bring criminal charges against the plaintiff for the same offense, but the charges were ultimately dismissed.   The plaintiff has presented no evidence beyond his bare accusation that the criminal charges were the result of any retaliatory action by the defendants.  Summary judgement is granted on the plaintiff's first claim.

2. CLAIM NO. 2 AND 3: DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL CONDITION.

The defendants argue that the plaintiff has failed to demonstrate that Defendants Starkey and Allen were deliberately indifferent to his medical condition on May 1, 2001.   In his deposition, the plaintiff says Defendant Starkey came to his cell to escort him out to receive his insulin treatment from Medical Technician Allen. (Def. Memo, Plain. Depo, p. 156)  The plaintiff says he feared that Starkey might hurt him and refused to come out of his cell.  The medical notes also indicate that the plaintiff was refusing to come out of his cell but state that no reason was given. (Def. Memo, Plain. Depo, p. 156)).  The plaintiff says about an hour and half later he felt he was having an insulin reaction. (Def. Memo, Plain Depo. p. 157)  The plaintiff says he alerted correctional staff and received treatment within 10 or 15 minutes. (Def. Memo, Plain Depo. p.

158) The plaintiff says Defendant Allen came to his cell and took him to the health care unit. (Def. Memo, Plain Depo. p. 163).

The defendants seem to allege the plaintiff did not suffer an insulin reaction and did not suffer any harm due to this delay.  However, the defendants simply attach medical records and ask the court to interpret them.  This is not sufficient.  The defendants must provide an affidavit from a doctor who either treated the plaintiff on this occasion or can interpret the record for the court. The affidavit must clearly state whether the plaintiff suffered an insulin reaction and whether he suffered any medical harm as a result.

The defendants also argue that Defendants Beasley, Birkel, Brown, Shettleworth, Melvin, Edgeton, Dahlbach, Hageman, Allen, Cramer, Schomig,  Jordan-Luster, Hetman, Tucker, Cravens, Hunt, Melvin, Pitchford and Snyder were not deliberately indifferent to the plaintiff's serious medical condition from October of 2001 to December of 2001 and from April of 2003 to May 2003.   The plaintiff alleges the defendants caused delays and interfered with his diabetes treatment.  The plaintiff clarified his claim in his deposition.

The plaintiff says he was offered his insulin every day. (Def. Memo, Plain. Depo, p. 111). However, when certain officers would come to his cell, the plaintiff would refuse to come out and receive his insulin.

"I felt threatened.  I felt they might attack me, which they had attacked me before, Officer Bethel and Lieutenant Scroggum had attacked me, and I wasn't going to chance coming out with my hands cuffed behind my back, and that's the way I felt." (Def. Memo, Plain. Depo, p. 112).

The plaintiff says the named defendants could have given him insulin in other ways. For instance, the plaintiff says some inmates had their insulin delivered to their cells and they did not have to come out of their cells and go into a holding tank.  (Def. Memo, Plain. Depo, p. 116).  The plaintiff says his treatment was delayed because he had to go to the holding cell.  (Def. Memo, Plain. Depo, p. 129, 132) In addition, the plaintiff says on a few occasions he was not allowed to use the Accucheck test that had been doctor approved.

The plaintiff has failed to demonstrate that the defendants were deliberately indifferent to his serious medical condition.  As previously stated, the plaintiff is not entitled to a specific type of treatment, or even the best care, only reasonable measures to prevent a substantial risk of serious harm. *Forbes v. Edgar,* 112 F.3d, 262, 267 (7th Cir. 1997).  The plaintiff admits he was provided insulin daily.  The plaintiff states when he refused his insulin, it was because he feared the guards who came to his cell.  However, the two guards he alleges attacked him, are not named as defendants in this allegation.  In addition, there is no evidence before this court that the plaintiff was ever attacked.  The plaintiff cannot chose who escorts him to his insulin treatment, nor where his insulin is administered.

Most importantly, there is no evidence that any alleged delay in treatment had a

7

detrimental impact on the plaintiff's health.  Dr. Funk has previously stated that the plaintiff "did not suffer injuries or have any diabetic reactions" during the relevant time frames of Claim No. 2. (Def. Memo, Funk Aff, p. 5) The motion for summary judgement is granted.

### 3. CLAIM NO. 5: RETALIATION

The defendants state that the plaintiff admits that neither Defendants Gerber or Gerberding wrote a retaliatory disciplinary ticket against the plaintiff in May of 2001.  In his deposition, the plaintiff admits that neither officer wrote a retaliatory ticket in May of 2001. (Def. Memo, Plain Depo. p. 168-169)  However, the plaintiff says Officer Gerberding did write a retaliatory ticket against him on August 7, 2003. (Def. Memo, Plain Depo. p. 170)   Since the plaintiff filed this lawsuit on April 11, 2003, he could not have exhausted his administrative remedies for a ticket that had not been written.  In addition, the plaintiff made no reference to this date in his Second Amended Complaint. [d/e 118, p. 3, 4] The claim against these two officers is dismissed.

### 4. CLAIM NO. 7: EXCESSIVE FORCE

The defendants argue that the plaintiff's claim that Officer Hobart used excessive force on December 24, 2004 is also barred by *Heck.*   In his deposition, the plaintiff states that he was ordered to comply with a strip search on his way back from a court appearance. (Def. Memo, Plain Depo. p. 219-220)  The plaintiff did not agree with the way he was treated, and a Tactical Unit, headed by Defendant Hobart was called. The defendants state that the plaintiff received a disciplinary ticket as a result of the event and lost three months of good time credit.
The defendants do not point the court to any document to verify this claim.  There is one report on good time credits that indicates that three months of good time credit was taken away on December 24, 2006. (Def. Memo, p. 129)  However, the court has no way of knowing what disciplinary ticket the plaintiff received or whether it was for the same event.  Therefore, the motion for summary judgement  is denied as to this allegation, but the defendants will be asked to provide the appropriate documentation.

## C. REMAINING CLAIMS

The court has granted Dr. Funk's motion for summary judgement.  The court will also grant summary judgement as to Claims No. 1, 2 and 5.  The plaintiff's surviving claims are[3]:

3) Defendants Starkey and Allen was deliberately indifferent to the plaintiff's serious medical condition on May 1, 2001 when the plaintiff suffered an insulin reaction.

4) Defendant Starkey wrote a false disciplinary report in retaliation for plaintiff's legal activities  in June of 2001 which was later expunged.

---

[3]The surviving claims are numbered as they appear in the June 13, 2005 Case Management Order

6) Defendants Forsyth, Linn, Croft, Dahlbach, Cramer, Hageman, Shettleworth and Melvin were all involved in "conspiracy and retaliatory conduct" from April 2001 to October of 2001 based on the plaintiff's grievances and lawsuits.

7) Defendant Hobart used excessive force on December 24, 2001 when the plaintiff complained about a body cavity search.

The surviving defendants include: Defendant Starkey, Allen, Forsyth, Linn, Croft, Dahlbach, Cramer, Hageman, Shettleworth, Melvin and Hobart.  All other defendants will be dismissed.

The defendants initial motion for summary judgement did not address Claims No. 4 or 7. Therefore, the court will ask the defendants to file a supplemental motion for summary judgement that addresses these claims.  In addition, the defendants must provide the additional information requested as to Claims No. 3 and 7.

**IT IS THEREFORE ORDERED that:**

**1) Defendant Funk's motion for summary judgement is granted pursuant to Fed. R. Civ. P. 56. [d/e 161]  The Clerk of the Court is directed to enter judgment in favor of Defendant Funk in accordance with this order.**

**2) The remaining defendants motion for summary judgement is granted in part and denied in part. [d/e 168] The plaintiff's sole surviving claims are as follows:**

> **a)  Defendants Starkey and Allen was deliberately indifferent to the plaintiff's serious medical condition on May 1, 2001 when the plaintiff suffered an insulin reaction.**
> **b) Defendant Starkey wrote a false disciplinary report in retaliation for plaintiff's legal activities  in June of 2001 which was later expunged.**
> **c) Defendants Forsyth, Linn, Croft, Dahlbach, Cramer, Hageman, Shettleworth and Melvin were all involved in "conspiracy and retaliatory conduct" from April 2001 to October of 2001 based on the plaintiff's grievances and lawsuits.**
> **d) Defendant Hobart used excessive force on December 24, 2001 when the plaintiff complained about a body cavity search.**

**The surviving defendants therefore include Defendant Starkey, Allen, Forsyth, Linn, Croft, Dahlbach, Cramer, Hageman, Shettleworth, Melvin and Hobart.**

**Summary judgement is granted as to all other claims pursuant to Fed.R.Civ.P 56. The clerk is directed to dismiss all other defendants including: Beasley, Birkel, Brown, Cravens, Edgeton, Evans, Gerber, Gerberding, Hetman, Hunt, Jordan-Luster, Kottcamp, Marshall, Pitchford, Schomig, Snyder, Tucker and West.**

**2) The remaining defendants are to submit a supplemental motion for summary judgement that:**

**a) Addresses the plaintiff's claim that Defendant Starkey wrote a false disciplinary report in retaliation for plaintiff's legal activities in June of 2001 which was later expunged;**

**b) Addresses the plaintiff's claim that Defendants Forsyth, Linn, Croft, Dahlbach, Cramer, Hageman, Shettleworth and Melvin were all involved in "conspiracy and retaliatory conduct" from April 2001 to October of 2001 based on the plaintiff's grievances and lawsuits;**

**c) Provide further information regarding the plaintiff's claim that Defendants Starkey and Allen was deliberately indifferent to the plaintiff's serious medical condition on May 1, 2001 when the plaintiff suffered an insulin reaction. The defendants must provide an affidavit from a doctor who either treated the plaintiff on this occasion or can interpret the medical records for the court. The affidavit must clearly state whether the plaintiff suffered an insulin reaction and whether he suffered any medical harm as a result of the delay in treatment.**

**d) Provide further information regarding the plaintiff's claim that Defendant Hobart used excessive force on December 24, 2001 when the plaintiff complained about a body cavity search. If the plaintiff received a disciplinary ticket based on this same event, the defendants should provide a copy of the ticket and the report from the resulting disciplinary hearing.**

**3) The defendants must file the well supported supplemental motion for summary judgement on or before January 2, 2007. NO CONTINUANCES WILL BE GRANTED. THIS CASE IS NOW MORE THAN THREE YEARS OLD AND READY FOR RESOLUTION.**

**4) The plaintiff must file any response to the supplemental motion for summary judgement on or before January 23, 2007. NO CONTINUANCES WILL BE GRANTED. IF THE PLAINTIFF FAILS TO MEET THIS DEADLINE, THE MOTION WILL BE CONSIDERED WITHOUT INPUT FROM THE PLAINTIFF.**

Enter this 30th day of November, 2006.

**s\Harold A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE

10

11