UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JACK NEWSOME,
    Plaintiff,

vs.                                                                                03-1109

WEXFORD HEALTH SERVICES, et.al.,
    Defendants.

**ORDER**

This cause is before the court for consideration of the defendants' supplemental motion for summary judgement. [d/e 182].

BACKGROUND

The pro se plaintiff originally filed his lawsuit pursuant to 42 U.S.C. §1983 against 60 defendants. On November 30, 2006, the court granted in part and denied in part the pending motions for summary judgement. *See* November 30, 3006 Court Order. The court instructed the surviving defendants to file a supplemental motion for summary judgement addressing the surviving claims. The defendants have complied and the plaintiff has filed a response.

The ten surviving defendants including Joel Starkey, Rusty Allen, Ryan Forsyth, Eric Linn, Adam Croft, Dennis Dahlbach, Craig Cramer, John Hageman, Josh Shettleworth, Francis Melvin and Patrick Hobart. The plaintiff's four surviving claims against these individuals include:

    1) Defendants Starkey and Allen were deliberately indifferent to the plaintiff's serious medical condition on May 1, 2001 when the plaintiff suffered an insulin reaction.

    2) Defendant Starkey wrote a false disciplinary report in retaliation for plaintiff's legal activities in June of 2001. The ticket was later expunged.

    3) Defendants Forsyth, Linn, Croft, Dahlbach, Cramer, Hageman, Shettleworth and Melvin were all involved in "conspiracy and retaliatory conduct" from April 2001 to October of 2001 in response to the plaintiff's grievances and lawsuits.

    4) Defendant Hobart used excessive force on December 24, 2001 when the plaintiff complained about a body cavity search**.**

The claims are against the defendants in their individual capacities only.

The court notes that this case is now more than three years old in large part due to the continuing struggle to identify the plaintiff's intended claims and defendants. In response to the supplemental motion for summary judgement, the plaintiff once again states that the court has not correctly identified his claims. The record of this case demonstrates that the court has been

patient and lenient in providing repeated opportunities for the plaintiff to clearly articulate his claims. *See* March 9, 2004 Text Order; March 16, 2005 Court Order; June 3, 2005 Court Order; June 13, 2005 Court Order; February 9, 2006 Court Order, and November 30, 3006 Court Order. The only claims before this court are the four identified above.

## I.  FACTS

The plaintiff did not respond to the statement of facts provided with either motion for summary judgement. The following facts are taken from the original motion for summary judgement as well as the supplemental motion and the attached documentation.

Defendant Joel Starkey wrote a inmate disciplinary report against the plaintiff on June 6, 2001 for sexual misconduct and insolence.  Starkey states that he and Officer Adam Croft observed the plaintiff throw a piece of paper out onto the cell gallery.  When the officers retrieved the paper, they found the contents to be sexual in nature. Therefore, Starkey wrote the disciplinary ticket.

When the Adjustment Committee heard the ticket, both Officer Starkey and Croft stated that they saw the plaintiff throw the paper, but they did not see him write the note.  The committee further stated it was unable to "ascertain if Inmate Newsome is the author of the note by comparing the letter to a sample of Inmate Newsome's handwriting from his master file." (Def. Memo, Ex. B-4)   The ticket was therefore dismissed.

Defendants Dahlbach, Cramer and Shettleworth took no disciplinary action against the plaintiff from April to October or 2001.   Defendants Forsyth, Linn, Croft, Hageman and Melvin did write disciplinary reports against the plaintiff during this time period.  The plaintiff was found guilty of at least one of the offenses charged in each ticket and none of the tickets were expunged.   The defendants have provide copies of the disciplinary reports and resulting Adjustment Committee hearings.

The plaintiff in his deposition says on May 1, 2001, Defendant Starkey came to his cell to escort him to receive his insulin treatment. (Def. Memo #1, Plain. Depo, p. 156)  The plaintiff says he feared that Starkey might hurt him and refused to come out of his cell.  The medical notes also indicate that the plaintiff was refusing to come out of his cell but state that no reason was given. (Def. Memo #1, Plain. Depo, p. 156)).  The plaintiff says about an hour and half later he felt he was having an insulin reaction. (Def. Memo #1, Plain Depo. p. 157)   The plaintiff says he alerted correctional staff and received treatment within 10 or 15 minutes. (Def. Memo #1, Plain Depo. p. 158) The plaintiff says Defendant Allen came to his cell and took him to the health care unit. (Def. Memo #1, Plain Depo. p. 163).

Dr. Liping Zhang, a staff physician at Pontiac Correctional Center, has reviewed the medical records of the plaintiff and provided an affidavit to the court.  Dr. Zhang says the plaintiff refused his insulin on April 29, 2001, April 30, 2001 and May 1, 2001.  At approximately 7:55 p.m. on May 1, 2001, the plaintiff was brought to the Health Care Unit's Urgent Care Clinic complaining of chest pain.

The doctor who examined the plaintiff noted that the plaintiff complained of a sudden onset of moderate chest, left shoulder and arm pain that lasted approximately 30 minutes. The plaintiff stated that the pain started after he got upset with staff. The plaintiff was

> alert and oriented, and in no acute distress, but was very agitated and argumentative. Upon examination, offender Newsome's vital signs were within the normal limits and an EKG showed normal sinus rhythm with no acute ischemic changes. (Def. Memo, Ex. D, p.1-2)

The plaintiff was discharged back to his cell. The medical records do not indicate that the plaintiff made any complaints related to his diabetic condition or lack of insulin while in the Urgent Care Clinic on May 1, 2001. Dr. Zhang says the plaintiff's "condition as documented on May 1, 2001, is not consistent with that of an individual suffering from an insulin imbalance." (Def Memo, Ex D., p. 2)

The plaintiff's medical records also show that the plaintiff was seen by medical personnel on May 6 and 10 of 2001 as well as July 2, 13, 18 and 24 of 2001. "At no time during these medical contacts is offender Newsome noted to have complained of or exhibited symptoms consistent with that of an individual suffering from an insulin imbalance." *Id.*

The court also notes that in the previous motion for summary judgement, Medical Director Dr. Arthur Funk stated that in his medical opinion "[a]t no time did I believe Mr. Newsome's diabetic condition was not being addressed adequately or that he was at increased risk of serious harm. Mr. Newsome did not suffer injuries or have any diabetic reactions" during the relevant time frames. (Def. Memo #1, Funk Aff, p. 5)

The plaintiff in his deposition states that on December 24, 2001, he was ordered to comply with a strip search on his way back from a court appearance. (Def. Memo, Plain Depo. p. 219-220) The plaintiff did not agree with the way he was treated, and a Tactical Unit, headed by Defendant Hobart was called. The plaintiff states Hobart and his team used excessive force and injured his shoulder.

The defendants have provided the incident reports of eight officers who responded to the plaintiff's cell. The officers state that the plaintiff refused to comply with a strip search. The tactical team was called, the plaintiff was again given a direct order to cuff up. The plaintiff complied with the second order. The reports all state that no force or chemical spray was used and there was no injury to the inmate or staff. The Adjustment Committee found the plaintiff guilty of the offense of disobeying a direct order.

The medical records show that on December 24, 2001, the plaintiff reported that his right shoulder had been "messed up" when the tactical team had jumped on him. The medical technician who took the plaintiff's report noted no swelling or deformity of the shoulder and referred him to the Health Care Unit.

At approximately 5:25 p.m. on December 24, 2001, the plaintiff was examined in the Urgent Care Clinic. The plaintiff stated that the tactical team had twisted his left shoulder and

left wrist.  The examining physician noted no evidence of an external injury to either the shoulder or wrist and no limitation of his range of motion with his wrist.  The plaintiff did complain of pain when pressure was applied to his shoulder area or with certain shoulder movements.  However, the physician noted no click or other evidence of inflamation of the shoulder.

The doctor ordered X-rays, Motrin for pain, warm compresses, exercise of the affected area and follow-up if needed after the X-rays.  The X-rays revealed no fractures.  The plaintiff made no further complaints to staff members about his shoulder or wrist.

### III.  LEGAL STANDARD

The entry of summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56( c).  A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute is genuine only if a reasonable jury could find for the nonmoving party.  *Id*.

A party moving for summary judgment initially has the burden of showing the absence of any genuine dispute of material fact based on the evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153 (1970);  *Schroeder v. Barth, Inc.,* 969 F.2d 421, 423 (7th Cir. 1992).  A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position.  *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994).  The evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.  Nonetheless, "(s)ummary judgement is not a discretionary remedy.  If the plaintiff lacks enough evidence, summary judgement must be granted." *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir. 1994).

### IV.  ANALYSIS

A. DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL CONDITION.

The defendants correctly argue that the plaintiff has failed to provide evidence that Defendants Starkey and Allen were deliberately indifferent to his serious medical condition on May 1, 2001.  The plaintiff must pass both an objective and a subjective test in order to establish that the defendants violated the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter,* 501 U.S. 294, 297 (1991).  The plaintiff must first demonstrate that the alleged deprivation was sufficiently serious. *Id*.  The plaintiff must also show that the defendants acted with deliberate indifference.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  "[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42).

"[P]roof of deliberate indifference may be found where a prison official intentionally denies or delays access to medical care or intentionally interferes with the treatment once

prescribed." *Jones v. Natesha*, 151 F.Supp.2d 938, 945 (N.D. Ill. 2001) *citing Ford*, 2001 WL 456427 at 6. A delay in scheduling an appointment for medical treatment may constitute deliberate indifference. *Jones v. Simek*, 193 F.3d 485, 490-491 (7th Cir. 1999) However, "an inmate who complains that delay in medical treatment rose to constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996).

The plaintiff has alleged that the defendants delayed his medical treatment for diabetes which lead to an insulin reaction. Even if the plaintiff could demonstrate that the defendants were responsible for a delay in treatment, there is no evidence before this court that the plaintiff suffered from an insulin reaction, nor is there evidence that a delay had any detrimental impact on the plaintiff. The motion for summary judgement on this claim is granted.

B. EXCESSIVE FORCE

The defendants also argue that the plaintiff has failed to demonstrate that Defendant Hobart used excessive force on December 24, 2001. When a prison official is accused of using excessive force, "the core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7(1992) *Id.* at 7. The court must examine a variety of factors to conduct this inquiry including "the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner."*DeWalt v. Carter,* 224 F.3d 607, 619 (7th Cir. 2000)(*citing Hudson,* 503 U.S. at 7.)

"[W]hile significant injury is not required, a claim ordinarily cannot be predicated upon a *de minimis* use of force." *DeWalt,* 224 F.3d at 619; *see also Outlaw v. Newkirk*, 259 F.3d 833, 839 (7th Cir. 2001)(minor injury from guard shutting cuffport door on inmate's hand dismissed on summary judgment for guard). "[T]he Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."*Hudson,* 503 U.S. at 9-10 (citation and internal quotations omitted).

In his deposition, the plaintiff admits that he was told to comply with a strip search by Officer Dix. The plaintiff says he did bend over, but Officer Dix told him he had not properly complied and needed to do it again. By his own account, the plaintiff argued and refused to repeat the procedure for Defendants Dix and Dallas. (Def. Memo #1, Plain Depo, p. 219-220). Defendant Hobart and the tactical team were called, but the parties disagree about what happened next. The officers claim no force was used. The plaintiff claims his shoulder was injured.

Even adopting the plaintiff's account of events, the officers had reason to use some force. The plaintiff refused to follow a strip search order. It does not matter that this was the second request and the plaintiff believes he had already followed directions. The officer told him he had not fully complied and the plaintiff responded by arguing and refusing direct orders. The medical records demonstrate that if any force was used, the plaintiff was not seriously injured.

Based on the evidence presented, the court finds that Officer Hobart did not use excessive force. The motion for summary judgement on this claim is granted.

C. RETALIATION- DEFENDANT STARKEY

The plaintiff has also failed to demonstrate that Defendant Starkey wrote a false disciplinary ticket against him in June of 2001 in retaliation for his past grievances and law suits. Although it is easy to state a retaliation claim, the burden of proving the claim is heavy. *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996); *see also Cole v Litscher*, 2005 WL 627791 (W.D. Wis. March 15, 2005). A prisoner must prove that his constitutionally protected conduct was a substantial or motivating factor in a defendant's actions. *Spiegla v. Hull*, 371 F.3d 928, 942-43 (7th Cir. 2004). Once the plaintiff proves that an improper purpose was a motivating factor, the burden shifts to the defendant to prove by a preponderance of the evidence that the same actions would have occurred in the absence of the protected conduct. *Id.* at 943. Therefore, if a prison officer's actions are supported by legitimate penological concerns, the retaliation claim fails as a matter of law.

The plaintiff has failed to demonstrate that retaliation was a motivating factor for Officer Starkey to write the ticket in June 6, 2001. In addition, the defendants have demonstrated that writing the ticket was supported by legitimate penological concerns. Both Officer Starkey and Officer Croft stated that they saw the plaintiff throw a piece of paper from his cell into the gallery. Clearly prisoners are not allowed to throw garbage or other objects out of their cells. The ticket was written because the contents of the paper the plaintiff was accused of throwing form his cell were sexually inappropriate. It is true that the plaintiff was not found guilty of the offense. However, this is due in large part to the fact that the officers admitted that while they saw the plaintiff throw the paper, they did not see him write the note inside. The motion for summary judgement is granted.

D. RETALIATION AND CONSPIRACY- DEFENDANTS FORSYTH, LINN, CROFT, DAHLBACH, CRAMER, HAGEMAN, SHETTLEWORTH AND MELVIN.

The defendants argue that the plaintiff has failed to demonstrate that any of these eight defendants retaliated against the plaintiff or participated in a conspiracy to retaliate against the plaintiff for his past grievances. The plaintiff alleges that these individuals took various retaliatory acts against him from April 2001 to October of 2001.

The court has previously stated the standard the plaintiff must meet in order to show an individual retaliated against him. To demonstrate a conspiracy, the plaintiff must demonstrate that the defendants 1) reached an agreement (express or implied) to deprive the plaintiff of constitutional rights; and 2) the plaintiff suffered "'actual deprivations of those rights in the form of overt acts in furtherance of the agreement.'" *Libra v. City of Litchfield*, 839 F. Supp. 1370, quoting *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988). In order to prove the existence of a civil conspiracy, a plaintiff is not required to provide direct evidence of the agreement between the conspirators; "(c)ircumstantial evidence may provide adequate proof of conspiracy." *Hoffman-LaRoche, Inc. v. Greenberg*, 447 F.2d 872, 875 (7th Cir.1971). *See also United States v. Varelli*, 407 F.2d 735, 741-42 (7th Cir.1969).

The bulk of the plaintiff's allegations involve the writing of disciplinary tickets against him. Both parties have submitted evidence of a number of tickets written against the plaintiff during this time frame. There are approximately 20 disciplinary tickets written against the plaintiff from April through October of 2001. None of the tickets is written by defendants Dahlbach, Cramer or Shettleworth.

At least five tickets were written by Defendant Forsyth, two by Croft and Linn, and one each for Hageman and Melvin. The vast majority of the disciplinary tickets involve charges of intimidation or threats, insolence or disobeying a direct order. The plaintiff was found guilty of most offenses he was charged with. In addition, while the plaintiff obviously disagrees with each ticket, none of the tickets written by Defendants Forsyth, Linn, Croft, Hageman or Melvin were expunged.

The plaintiff lost good time credits as a result of some of the tickets. Since the plaintiff is claiming the tickets were false and based only on retaliatory action by the defendants, these claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) and *Edwards v. Balisok*, 520 U.S. 641 (1997). The court cannot consider the plaintiff's claim that these tickets were motivated by retaliation because the plaintiff would first have to demonstrate that the discipline was invalid in order to prove his case. *See Bean v. Washington*, 1999 WL 759481 at 2 (N.D. Ill. 1999).

There is no evidence that the remaining tickets were written as a result of any retaliatory action other than the plaintiff's bald assertions. The plaintiff has also presented no evidence of a conspiracy.

The plaintiff does state that disciplinary tickets are not the only way a defendant could retaliate against him. For instance, he plaintiff states that Defendant Shettleworth issued an order instructing staff to have plaintiff wear "leg-irons" whenever he was escorted to and from his cell for insulin injections. (Plain. Memo, p. 7). Again, there is not sufficient evidence that retaliation was the motivating factor for this decision and the defendant has legitimate penological concern for this action. The motion for summary judgement is granted.

**IT IS THEREFORE ORDERED that:**

**1) The defendants' motion for summary judgement is granted pursuant to Fed. R. Civ. P. 56. [d/e 182] The Clerk of the Court is directed to enter judgment in favor of the defendants in accordance with this order. The parties are to bear their own costs. This case is terminated.**

**2) The agency having custody of the plaintiff is directed to remit the docketing fee of $150.00 from the plaintiff's prison trust fund account if such funds are available. If the plaintiff does not have $150.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $150.00 is paid**

in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $150.00.

**3) The plaintiff is responsible for ensuring the $150.00 filing fee is paid to the clerk of the court even though his case has been dismissed.  Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.  The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.**

**4)  The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.**

Enter this 20th day of February, 2007.


                 s\Harold A. Baker

_____
                HAROLD A. BAKER
        UNITED STATES DISTRICT JUDGE